**No. 24-271**

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

X CORP., Successor in Interest to Twitter, Inc.,
*Plaintiff-Appellant*

v.

ROBERT BONTA, Attorney General Of The State Of California,
*Defendant-Appellee*

On Appeal From the United States District Court for the
Eastern District of California, Case No. 2:23-cv-01939-WBS-AC
The Honorable William B. Shubb, Judge

# BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT

Jonathan D. Urick
Maria C. Monaghan
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

Megan L. Brown
*Counsel of Record*
Jeremy J. Broggi
Boyd Garriott
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000
mbrown@wiley.law

*Counsel for Amicus Curiae, Chamber of Commerce of the United States of America*

February 21, 2024

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* Chamber of Commerce of the United States of America hereby certifies that it is a non-profit, tax-exempt corporation incorporated in the District of Columbia. It has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

# TABLE OF CONTENTS


Rule 26.1 Corporate Disclosure Statement .......... i

Table Of Contents .......... ii

Table of Authorities .......... iii

Introduction And Interest Of *Amicus Curiae* .......... 1

Argument .......... 2

I. AB 587 Regulates Social Media Companies' Speech. .......... 2

A. AB 587 Compels Social Media Companies' Speech On Controversial Topics. .......... 3

B. AB 587 Restricts Social Media Platforms' Editorial Judgments .......... 5

II. The District Court Erred By Applying *Zauderer* To Assess California's Speech Regulation. .......... 10

A. Content- And Viewpoint-Based Speech Regulations Like AB 587 Are Always Subject To Strict Scrutiny. .......... 10

B. *Zauderer* Review Applies in Narrow Circumstances Not Present Here. .......... 13

C. The District Court's Decision Reflects a Broader and Concerning Trend of Misapplying *Zauderer*. .......... 16

III. AB 587 Fails Any Form Of First Amendment Review. .......... 18

A. Satisfying Consumer Curiosity Is Not A Substantial Government Interest. .......... 19

B. AB 587 Fails Any First Amendment Fit Analysis Because It Is Unjustified And Unduly Burdensome. .......... 20

Conclusion .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023)....................3

*Abrams v. United States*,
250 U.S. 616 (1919)....................16

*American Beverage Association v. City & County of San Francisco*,
916 F.3d 749 (9th Cir. 2019)....................20

*American Meat Institute v. U.S. Department of Agriculture*,
760 F.3d 18 (D.C. Cir. 2014)....................17, 20

*Americans for Prosperity Foundation v. Bonta*,
141 S. Ct. 2373 (2021)....................9

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002)....................10

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024)....................17

*California Chamber of Commerce v. Council for Education & Research on Toxics*,
29 F.4th 468 (9th Cir. 2022)....................15

*City of Austin, Texas v. Reagan National Advertising of Austin, LLC*,
596 U.S. 61 (2022)....................11

*CTIA - The Wireless Association v. City of Berkeley*,
928 F.3d 832 (9th Cir. 2019)....................14, 15, 16, 19

*FEC v. Cruz*,
596 U.S. 289 (2022)....................19

*Green v. Miss United States of America, LLC*,
52 F.4th 773 (9th Cir. 2022)....................10

*Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of Boston*,
515 U.S. 557 (1995) .......... 6, 13

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .......... 14

*International Dairy Foods Association v. Amestoy*,
92 F.3d 67 (2d Cir. 1996) .......... 18, 19, 20

*Janus v. American Federation of State, County, & Municipal Employees, Council 31*,
138 S. Ct. 2448 (2018) .......... 3

*Junior Sports Magazines Inc. v. Bonta*,
80 F.4th 1109 (9th Cir. 2023) .......... 19

*Management Properties, LLC v. Town of Redington Shores*,
352 So. 3d 909 (Fla. Dist. Ct. App. 2022) .......... 17

*Miami Herald Publishing Co. v. Tornillo*,
418 U.S. 241 (1974) .......... 6, 7, 8, 9

*National Association of Manufacturers v. SEC*,
800 F.3d 518 (D.C. Cir. 2015) .......... 14, 18

*National Association of Wheat Growers v. Bonta*,
85 F.4th 1263 (9th Cir. 2023) .......... 13, 15

*National Institute of Family & Life Advocates v. Becerra*,
585 U.S. 755 (2018) .......... *passim*

*NetChoice v. Yost*,
2024 WL 555904 (S.D. Ohio Feb. 12, 2024) .......... 5

*NetChoice, LLC v. Attorney General, Florida*,
34 F.4th 1196 (11th Cir. 2022) .......... 6

*Pacific Gas & Electric Co. v. Public Utilities Commission of California*,
475 U.S. 1 (1986) .......... 6, 9

*Packingham v. North Carolina*,
582 U.S. 98 (2017) .......... 5

*Reed v. Town of Gilbert, Arizona*,
576 U.S. 155 (2015)....................10, 11

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
487 U.S. 781 (1988)....................10

*Safelite Group, Inc. v. Jepsen*,
764 F.3d 258 (2d Cir. 2014)....................17

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)....................6, 12

*Turner Broadcasting System, Inc. v. FCC*,
512 U.S. 622 (1994)....................6

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023)....................5

*United States v. United Foods, Inc.*,
533 U.S. 405 (2001)....................13

*Wooley v. Maynard*,
430 U.S. 705 (1977)....................5

*X Corp. v. Bonta*,
2023 WL 8948286 (E.D. Cal. Dec. 28, 2023)....................*passim*

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
471 U.S. 626 (1985)....................13, 15

**Statutes**

Cal. Bus. & Prof. Code § 22677....................*passim*

Cal. Bus. & Prof. Code § 22678....................8

**Legislative Materials**

AB 587 Bill Analysis, Assembly Committee on Judiciary (Apr. 24, 2021), http://tinyurl.com/4wbcfrah....................7

AB 587 Bill Analysis, Assembly Floor (Aug. 30, 2022), http://tinyurl.com/4wbcfrah....................9, 15, 16

**Other Authorities**

Federal Trade Commission, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising* 17, 21 (Mar. 2013), http://tinyurl.com/3uacrby9 ....................21

Jeffrey Gottfried, *Americans' Social Media Use*, Pew Rsch. Ctr. (Jan. 31, 2024), http://tinyurl.com/mswwkwdj ....................5

Lee Rainie, et al., *Mixed views about social media companies using algorithms to find false information*, Pew Rsch. Ctr. (Mar. 17, 2022), http://tinyurl.com/y5bk7es3 ....................4

Office of the Attorney General, *Terms of Service Reports*, https://oag.ca.gov/ab587/submissions ....................4

## INTRODUCTION AND INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber has a critical interest in the resolution of this case. The law at issue, California Assembly Bill 587 ("AB 587" or "the Act"), reflects a growing trend of government interference in the private editorial judgments of businesses that operate on the Internet. These unlawful efforts significantly affect the Chamber's membership, including social media companies, businesses that rely on social media platforms to reach interested consumers, and other companies that participate in today's vibrant online economy.

[1] No counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of the brief. *See* Fed. R. App. P. 29(a)(4)(E). All parties have consented to the filing of this brief.

This Court should hold that the Act squarely violates the First Amendment. AB 587 compels social media companies to provide the Attorney General and—by extension—the public with detailed information about whether and how they define and moderate categories of content that California thinks objectionable. By requiring private companies to broadcast their views on issues California has deemed important, AB 587 compels speech in violation of the First Amendment. Furthermore, because AB 587's disclosure requirements are designed to unconstitutionally pressure companies into aligning their protected editorial discretion with California's content-based judgments, it also operates as a speech restriction. Whether viewed as a compulsion or a restriction, AB 587's content- and viewpoint-based speech regulations are subject to strict scrutiny—not to the lesser standard the Supreme Court has reserved for the narrow circumstance in which the government requires companies to add uncontroversial factual statements to otherwise misleading commercial advertisements. Regardless, AB 587 cannot satisfy any form of First Amendment review because it does not further a substantial state interest and is unjustified and unduly burdensome.

## ARGUMENT

### I. AB 587 Regulates Social Media Companies' Speech.

AB 587 requires social media companies to submit semi-annual "terms of service reports" to the Attorney General describing the companies' "current version

of the terms of service" and explaining whether and how the companies define and address on their platforms "hate speech or racism," "extremism or radicalization," "disinformation or misinformation," "harassment," and "foreign political interference." Cal. Bus. & Prof. Code § 22677(a)(3)–(a)(4) (capitalization altered). This disclosure requirement regulates these private companies' speech in two, equally problematic ways. First, the law compels private companies to speak publicly on controversial topics. Second, the law is designed to force private companies to exercise their editorial discretion in a way that California lawmakers see fit. Laws aimed at compelling or restricting speech in this manner strike at the core of the First Amendment.

### A. AB 587 Compels Social Media Companies' Speech On Controversial Topics.

AB 587 burdens First Amendment rights by compelling speech on controversial topics. The Supreme Court has "held time and again that freedom of speech includes both the right to speak freely and the right to refrain from speaking at all." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018) (quotations omitted). It thus "offends the First Amendment" when "the government seeks to compel a person to speak its message when he would prefer to remain silent or to force an individual to include other ideas with his own speech that he would prefer not to include." *303 Creative LLC v. Elenis*, 600 U.S. 570, 586–87 (2023). AB 587 violates this fundamental constitutional precept.

Specifically, AB 587 compels speech by forcing social media companies to report their content-moderation policies, and to do so using categories created by the government. As explained, the statute requires platforms to submit semi-annual reports to the Attorney General discussing whether and how the company defines and moderates certain government-created "categories" of speech, including "hate speech" and "disinformation or misinformation." Cal. Bus. & Prof. Code § 22677(a)(3), (4), (5) (capitalization altered). The Attorney General, for his part, publishes the reports online. Office of the Attorney General, *Terms of Service Reports*, https://oag.ca.gov/ab587/submissions (last visited Feb. 21, 2024).

The contents of these reports are undoubtedly controversial. Millions of Americans post and access content on social media platforms every day. Platforms must make weighty decisions about how to organize and, sometimes, to remove user-generated posts. And reasonable minds can—and do—vigorously disagree on what categories of content should be regulated, how those categories should be defined, and the degree of moderation to which they should be subject. *See, e.g.*, Lee Rainie, et al., *Mixed views about social media companies using algorithms to find false information*, Pew Rsch. Ctr. (Mar. 17, 2022), http://tinyurl.com/y5bk7es3 (reporting "public relatively split"). By forcing social media companies to publicly discuss these controversial practices in "detail[]" and on terms California dictates,

Cal. Bus. & Prof. Code § 22677, AB 587 plainly burdens the First Amendment "right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

### B. AB 587 Restricts Social Media Platforms' Editorial Judgments

The Supreme Court has held that "'the Internet' in general" and "social media in particular" are among "the most important places" for expressive activities. *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (quoting *Reno v. ACLU*, 521 U.S. 844, 868 (1997)). Today, most adults in the United States use social media platforms to share and consume information on many important topics. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 480 (2023); Jeffrey Gottfried, *Americans' Social Media Use*, Pew Rsch. Ctr. (Jan. 31, 2024), http://tinyurl.com/mswwkwdj. And many businesses use social media platforms to reach consumers.

The First Amendment protects the editorial judgments that social media companies make about the content that appears on their platforms. *See* Br. of The United States Chamber of Commerce as *Amicus Curiae*, *Moody v. NetChoice, LLC*, No. 22-277 & *NetChoice, LLC v. Paxton*, No. 22-555 (S. Ct., filed Dec. 7, 2023). Although approaches vary, in general, "social media platforms are not engaged in indiscriminate, neutral transmission of any and all users' speech." *NetChoice v. Yost*, 2024 WL 555904 at *11 (S.D. Ohio Feb. 12, 2024) (quotation omitted). Instead, many platforms regulated by AB 587 curate users and content on their platforms, conveying their own messages about what is acceptable content and

behavior in the community they intend to foster. *See* Appellant's Br. 12–13. Specifically, many platforms set their own boundaries for what they define as permissible speech; select speakers, topics, and content to amplify; arrange and disseminate speech based on user preferences; and sometimes append their own messages to others' speech. Because such activities are "closely analogous to the editorial judgments that the Supreme Court recognized in *Miami Herald*,[2] *Pacific Gas*,[3] *Turner*,[4] and *Hurley*,[5]" *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1213 (11th Cir. 2022) (footnotes added), *cert. granted in part sub nom. Moody v. NetChoice, LLC*, 144 S. Ct. 478 (2023), they are squarely within the First Amendment's protection.

AB 587 burdens and restricts these protected editorial judgments. Although the provision is not so bold as to completely ban such particular judgments, it nevertheless imposes content- and viewpoint-based burdens restricting them. "'Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.' Lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content." *Sorrell v. IMS Health Inc.*,

---

[2] *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974).

[3] *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1 (1986) (plurality opinion).

[4] *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994).

[5] *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995).

564 U.S. 552, 566 (2011) (quoting *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 812 (2000)). By identifying broad content-based categories of protected speech as potentially dangerous enough to merit action and then requiring social media platforms to describe whether and how their content-moderation policies address those categories, AB 587 imposes content- and viewpoint-based burdens interfering with social media platforms' constitutionally protected independent editorial judgments.

The official legislative history of the bill further confirms that AB 587's disclosure mandate is designed to "pressure" social media companies "to become better corporate citizens by doing more to eliminate hate speech and disinformation." AB 587 Bill Analysis at 4, Assembly Committee on Judiciary (Apr. 24, 2021) ("April 24, 2021 Assembly Analysis"), *available at* http://tinyurl.com/4wbcfrah. Restricting and interfering with social media platforms' protected editorial judgments is thus the law's explicit effect and underlying purpose.

In *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974), the Supreme Court explained that the government may not restrict editorial judgment through speech compulsions. There, the Court held unconstitutional "a state statute granting a political candidate a right to equal space to reply to criticism and attacks on his record by a newspaper." *Id.* at 243. The Court found the right-to-reply requirement a speech restriction because some newspaper "editors might well

conclude that the safe course is to avoid controversy" and thus refrain from publishing speech that might trigger the requirement. *Id.* at 257. The result was that speech "would be blunted or reduced." *Ibid.*

AB 587's compulsion restricts speech in an equally impermissible way. As explained, many social media platforms curate users and content according to the type of communities they are trying to create. These companies make editorial judgments for all types of reasons, including for the purpose of drawing users to their platforms. These judgments may or may not line up with the "categories of content" or "content moderation practices" that California creates and deems important. *See* Cal. Bus. & Prof. Code § 22677(a)(3), (a)(4). But given the severe penalties for violating AB 587, *see* Cal. Bus. & Prof. Code § 22678, and the Attorney General's wide discretion to determine whether the platform has "materially omit[ted] or misrepresent[ed] required information" in the report, *id.* § 22678(a)(2)(C), some platforms "might well conclude that the safe course is to avoid controversy," *Miami Herald*, 418 U.S. at 257, and so adjust their content-moderation choices to reflect California's values. At the very least, platforms concerned about potential liability may feel the need to address California's content-based judgements to avoid "threats of investigation and draconian fines." Appellant's Br. 13–16. Platforms may also find that going along with California's approach—even if it is not the best one or the one that aligns with their values—will help them avoid public "retaliation" for their

content-moderation policies. *See Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2381 (2021) (holding unconstitutional California reporting requirement).

AB 587 also undermines editorial discretion because it "impermissibly requires [companies] to associate with speech with which [they] may disagree." *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 15 (1986) (plurality opinion). Because the law orders the platforms to discuss their content-moderation practices through the lens of California's speech categories or expressly state that they refuse to do so, "there can be little doubt that [they] will feel compelled to respond" to the State's framing of the issues. *Id.* at 16. "That kind of forced response is antithetical to the free discussion that the First Amendment seeks to foster." *Ibid.*

In short, the sponsors of AB 587 knew that "placing specific content moderation requirements on companies" would "raise[] constitutional issues" under the First Amendment, AB 587 Bill Analysis at 2, Assembly Floor (Aug. 30, 2022) ("Aug. 30, 2022 Assembly Analysis"), *available at* http://tinyurl.com/4wbcfrah, and so sought to achieve the same result indirectly. But the fundamental protections of the First Amendment are not so easily evaded. Because AB 587 burdens and restricts social media platforms' constitutionally protected "exercise of editorial control and judgment," *Miami Herald*, 418 U.S. at 258, it burdens protected speech.

## II. THE DISTRICT COURT ERRED BY APPLYING *ZAUDERER* TO ASSESS CALIFORNIA'S SPEECH REGULATION.

### A. Content- And Viewpoint-Based Speech Regulations Like AB 587 Are Always Subject To Strict Scrutiny.

The court below rightly recognized that AB 587 regulates speech but then wrongly failed to apply the rigorous review the First Amendment requires. Foremost, "the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002). For this reason, laws that regulate speech based on its content or viewpoint "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see id.* at 168–69.

AB 587 regulates based on content for three reasons. First, by definition, speech mandates require private actors "to speak a particular message," *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) ("*NIFLA*"), so "compulsion is a content-based regulation," *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 791 (9th Cir. 2022). "Mandating speech that a speaker would not otherwise make," the Supreme Court has explained, "necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988). Thus, AB 587's compelled disclosures are necessarily content-based.

Second, AB 587 requires companies to explain whether and what actions they are taking to address specific categories of speech. On its face, therefore, AB 587 "single[s] out" several "topic[s] and "subject matter[s]," *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71 (2022), including content-moderation policies on what the State terms "hate speech or racism," "extremism or radicalization," "disinformation or misinformation," "harassment," and "foreign political interference," Cal. Bus. & Prof. Code § 22677(a)(3)–(a)(4) (capitalization altered). AB 587 is thus content-based for the additional reason that it regulates speech based on its communicative content.

Third, AB 587 regulates based on viewpoint, "a 'more blatant' and 'egregious form of content discrimination.'" *Reed*, 576 U.S. at 168 (parenthetical phrase omitted). AB 587 is viewpoint-based because it does not require disclosure of content-moderation practices in general but instead singles out specific categories of content that California views as dangerous. Cal. Bus. & Prof. Code § 22677(a)(3). The statute thus forces private speakers to convey the State's message that these topics are worthy of special concern. More than that, the statute disfavors specific speakers, namely social media platforms. As a result of AB 587, only social media companies are required to disclose their views about the categories of speech identified in the statute. *See NIFLA*, 585 U.S. at 777–78 ("This Court's precedents are deeply skeptical of laws that 'distinguish among different speakers, allowing

speech by some but not others.' Speaker-based laws run the risk that 'the State has left unburdened those speakers whose messages are in accord with its own views.'") (citing *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) & *Sorrell*, 564 U.S. at 580).

Although AB 587 is explicitly content- and viewpoint-based on its face, any doubt is resolved by the formal legislative findings. The General Assembly designed the statute's disclosure to "pressure" social media companies to "do[ ] more to eliminate hate speech and disinformation." April 24, 2021 Assembly Analysis at 4. "Just as the 'inevitable effect of a statute on its face may render it unconstitutional,' a statute's stated purposes may also be considered." *Sorrell*, 564 U.S. at 565 (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). Here, AB 587 is content- and viewpoint-based on its face, and its sponsors acknowledged their goal of forcing social media companies to suppress disfavored speech, describing "the bill as 'an important first step' in protecting our democracy from the dangerously divisive content that has become all too common on social media." April 24, 2021 Assembly Analysis at 4. Given the legislative report and the statutory language, "it is apparent that [AB 587] imposes burdens that are based on the content of speech and that are aimed at a particular viewpoint." *Sorrell*, 564 U.S. at 565. AB 587 is thus subject to strict scrutiny.

### B. *Zauderer* Review Applies in Narrow Circumstances Not Present Here.

Instead of applying strict scrutiny, the district court erroneously applied "the test set forth by the Supreme Court in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)." *X Corp. v. Bonta*, 2023 WL 8948286, at *1–*2 (E.D. Cal. Dec. 28, 2023). This error impermissibly lowered California's burden to justify its regulation of private companies' speech.

As this Court has explained more than once, "*Zauderer* [i]s an 'exception'" to the general First Amendment rule. *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1275 (9th Cir. 2023) (quoting *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 843 (9th Cir. 2019)). Its more lenient standard has a specific and limited domain: it applies only where the government regulates misleading "commercial advertising" by requiring the advertiser to disclose "purely factual and uncontroversial information about the terms under which his services will be available." *Zauderer*, 471 U.S. at 651; *see also NIFLA*, 585 U.S. at 768–69 (holding "*Zauderer* standard does not apply" to California law requiring crisis pregnancy centers to disclose information that was not about "the services that licensed clinics provide" and that was far from "uncontroversial"); *United States v. United Foods, Inc.*, 533 U.S. 405, 408, 416 (2001) (refusing to apply *Zauderer* where mandatory assessments were not "somehow necessary to make voluntary advertisements nonmisleading for consumers"); *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp.*

*of Bos.*, 515 U.S. 557, 573 (1995) (explaining that "[a]lthough the State may at times prescribe what shall be orthodox in commercial advertising," it may not do so "outside that context" (quotation omitted)); *Nat'l Ass'n of Manufacturers v. SEC*, 800 F.3d 518, 522–24 (D.C. Cir. 2015) ("the Supreme Court's opinion in *Zauderer* is confined to advertising, emphatically and, one may infer, intentionally"). Those prerequisites are absent here.

To begin, AB 587 does not compel speech in the context of misleading commercial advertising. As the lower court rightly found, "reports to the Attorney General" are "not advertisements." *X Corp.*, 2023 WL 8948286, at *2. Nor do they "propose a commercial transaction." *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020). These findings alone preclude *Zauderer*'s application. *See NIFLA*, 585 U.S. at 771 (noting that the Court in *Zauderer* emphasized that the statements at issue "would have been 'fully protected' if they were made in a context other than advertising").[6]

---

[6] This Court's decision in *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832 (9th Cir. 2019), is not to the contrary. That case applied *Zauderer* to an ordinance requiring "at the point of sale" certain disclosures about federally imposed cellphone safety guidelines. *Id.* at 845–50. The sale of a good not only "propose[s] a commercial transaction," *IMDb.com*, 962 F.3d at 1122, it *is* the transaction, *accord Nat'l Ass'n of Manufacturers*, 800 F.3d at 522 (finding that *Zauderer* does not reach "compelled disclosures that are unconnected to advertising or product labeling at the point of sale").

Even more, AB 587 does not require disclosure of "uncontroversial information." *Zauderer*, 471 U.S. at 651. A disclosure is controversial where the regulated party must take "sides in a heated political controversy." *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 845 (9th Cir. 2019); *see also NIFLA*, 585 U.S. at 769 (finding "*Zauderer* standard does not apply" where disclosure was about "abortion, anything but an 'uncontroversial' topic"). Thus, this Court has declined to apply *Zauderer* when assessing "a compelled statement of a hotly disputed scientific finding," *Wheat Growers*, 85 F.4th at 1278, or a disclosure on a topic subject to "robust disagreement," *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 & n.10 (9th Cir. 2022).

The nature and extent of social media platforms' content-moderation policies are clearly controversial, as the authors of AB 587 recognized. Returning yet again to the General Assembly's own findings, the bill analysis candidly explains that "social media platforms are faced with a complex dilemma regarding content moderation." Aug. 30, 2022 Assembly Analysis at 2. In particular, many "categories of information," "such as hate speech, racism, extremism, misinformation, political interference, and harassment"—i.e., the exact categories subject to AB 587's disclosure requirement—"are far more difficult to reliably define, and assignment of their boundaries is often *fraught with political bias*." *Ibid.* (emphasis added). For these categories, the legislature observed that "both action

and inaction by these companies seems to be equally maligned: too much moderation and accusations of censorship and suppressed speech arise; too little, and the platform risks fostering a toxic, sometimes dangerous community." *Ibid.*; *accord X Corp.*, 2023 WL 8948286, at *2 ("social media content moderation is a topic of public concern."). Because AB 587 requires platforms to take "sides in a heated political controversy," *CTIA*, 928 F.3d at 845, *Zauderer* cannot apply.

For at least these two independent reasons, the district court should have applied strict scrutiny.

### C. The District Court's Decision Reflects a Broader and Concerning Trend of Misapplying *Zauderer*.

Although the Supreme Court has limited the *Zauderer* test to uncontroversial disclosures in the context of commercial advertising, there is a growing trend among lower courts (like the one below) to apply it more broadly, relieving governments of their burden to justify speech regulation and intrude into the marketplace of ideas. In addition to violating the Supreme Court's teaching, these misapplications invite more government intrusion into expression and threaten to distort the free and uninhibited debate the First Amendment was designed to protect. *See NIFLA*, 585 U.S. at 772; *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting).

Examples abound. In Connecticut, a district court erroneously invoked *Zauderer* to uphold a law requiring businesses to "promote the product of a

competitor." *Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 264 (2d Cir. 2014) (reversing district court). In Florida, a state trial court erroneously invoked *Zauderer* to uphold an ordinance compelling companies to report their customers to law enforcement for civil infractions, like "parking" violations. *Mgmt. Properties, LLC v. Town of Redington Shores*, 352 So. 3d 909, 911–13 (Fla. Dist. Ct. App. 2022) (reversing trial court). In Texas, the state government erroneously invoked *Zauderer* to require businesses to label library books with "ratings" based on their offensiveness, analogizing its politically charged scheme to a "nutrition label." *Book People, Inc. v. Wong*, 91 F.4th 318, 326–27, 339 (5th Cir. 2024) (enjoining law).

In all of these cases, legislators and lower-court judges have sought to force businesses to speak as a means to push a government agenda. And there is every reason to think that onerous compelled disclosures will proliferate and become even more controversial, absent judicial intervention. After all, "consumers might want to know the political affiliation of a business's owners." *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 32 (D.C. Cir. 2014) (Kavanaugh, J., concurring). Others "might want to know whether their U.S.-made product was made by U.S. citizens." *Ibid.* "These are not far-fetched hypotheticals," *ibid.*, and this Court should not allow a watered-down standard of review to make them a reality.

Misapplying *Zauderer* not only has the effect of allowing governments to intrude into the marketplace of ideas, but it invites governments to try and do

indirectly through disclosure obligations what they cannot do directly through regulations on conduct. This case is a prime example. Having concluded that placing specific content-moderation obligations on social-media companies would "raise[] constitutional issues," *see supra* Section I.B, the sponsors of AB 587 instead attempted to achieve the same result by forcing companies to tell the Attorney General whether they are moderating content within specified categories, and to do so in a report that the Attorney General will release to the public. *Zauderer* was not designed to permit an end run around the legal limits on the government's authority to regulate. *See, e.g.*, *Nat'l Ass'n of Manufacturers*, 800 F.3d at 526, 530 (rejecting disclosure that attempted to address "the conflict in the [Congo]" by requiring manufacturers to disclose whether minerals used in their products were "conflict free"); *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 69–70, 75 (2d Cir. 1996) (rejecting disclosure that attempted to aid in-state milk producers and influence FDA policy by requiring milk produced from cows treated with recombinant Bovine Somatotropin to be labeled as such). Yet too often, the misapplication of *Zauderer* permits just that.

## III. AB 587 FAILS ANY FORM OF FIRST AMENDMENT REVIEW.

The district court was wrong to apply *Zauderer* and doubly wrong to uphold AB 587. AB 587 does not pass constitutional muster under even the *Zauderer* test, and it certainly would not survive any higher scrutiny.

### A. Satisfying Consumer Curiosity Is Not A Substantial Government Interest.

This Court has held that the State must identify a "substantial—that is, more than trivial—government interest" to survive under *Zauderer*. *CTIA*, 928 F.3d at 844. More than that, "California must provide evidence establishing 'that the harms it recites are real.'" *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1117 (9th Cir. 2023) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993)); *see also FEC v. Cruz*, 596 U.S. 289, 307 (2022) (explaining that the government "must do more than simply posit the existence of the disease sought to be cured").

The State has failed to either identify, let alone prove, a substantial interest. California said its interest was in "requiring social media companies to be transparent about their content moderation policies and practices so that consumers can make informed decisions about where they consume and disseminate news and information." *X Corp.*, 2023 WL 8948286, at *2. But that does not suffice. Although this Circuit has said that preventing consumer deception is not the *only* government interest that can justify a disclosure requirement under *Zauderer*, it and others have held that "the interest at stake must be more than the satisfaction of mere 'consumer curiosity.'" *CTIA*, 928 F.3d at 844; *see also, e.g.*, *Amestoy*, 92 F.3d at 73 ("We are aware of no case in which consumer interest alone was sufficient[.]"). And here, California offers nothing else.

California may not elevate its interest above curiosity by asserting that disclosures facilitate "informed decisions." *X Corp.*, 2023 WL 8948286, at *2; *see Amestoy*, 92 F.3d at 70, 74 (finding no substantial interest in "informed shopping decisions"). "After all, that would be true of any and all disclosure requirements." *Am. Meat Inst.*, 760 F.3d at 31 (Kavanaugh, J., concurring). And although "governments (federal, state, and local) would love to have such a free pass to spread their preferred messages on the backs of others," the First Amendment forecloses "that kind of free-wheeling government power." *Id.* at 31–32.

### B. AB 587 Fails Any First Amendment Fit Analysis Because It Is Unjustified And Unduly Burdensome.

Not only did the District Court impermissibly relieve California of its burden to prove a substantial interest, the court failed to properly apply *Zauderer*'s fit analysis. Under *Zauderer*, the government must "prove that [its disclosure] is neither unjustified nor unduly burdensome." *NIFLA*, 585 U.S. at 776. To satisfy that standard, the disclosure must "remedy" a real harm and "extend no broader than reasonably necessary." *Ibid.* (quotations omitted); *accord Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 756–57 (9th Cir. 2019) (en banc). AB 587 does neither.

Even if indulging consumer curiosity was a substantial government interest, California has not shown that AB 587 would further it. In *NIFLA*, the Supreme Court found that a California disclosure requirement could not satisfy *Zauderer*

where the State could "point[] to nothing suggesting that" individuals did "not already know" the information the State sought to disseminate through disclosures. *NIFLA*, 585 U.S. at 776–77. The same is true here. There is no evidence in the record that consumers lack adequate information on social media platforms' content-moderation policies. And even if there were evidence of a gap in consumer knowledge, California has not shown that AB 587's disclosures would remedy it. To the contrary, California's requirement for lengthy, detailed disclosures to the Attorney General are unlikely to influence consumer decisionmaking. *Cf.* Federal Trade Commission, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising* 17, 21 (Mar. 2013), http://tinyurl.com/3uacrby9 (explaining that for "disclosures to be effective," they should be sufficiently "prominent" and "simple and straightforward").

AB 587 also "unduly burdens protected speech." *NIFLA*, 585 U.S. at 777. The Act mandates government-dictated disclosures, *supra* Section I.A, that restrict platforms' protected editorial judgments, *supra* Section I.B. But California imposes these requirements "no matter what the [platforms] say" elsewhere about their content-moderation policies. *NIFLA*, 585 U.S. at 777. Thus, even platforms that are already transparent about their content-moderation policies must nevertheless disclose information on a semiannual basis and in accordance with California's predetermined categories of content to the Attorney General. And far from being

"no broader than reasonably necessary," *id.* at 776 (quotations omitted), AB 587 on its face calls for a "detailed description" of the relevant content, Cal. Bus. & Prof. Code § 22677(a)(4). California offers no reason why a narrower disclosure would not suffice. Indeed, as explained, a narrower disclosure would arguably be superior.

Because California lacks a substantial interest to justify its regulation of speech, and because California has not met its burden in showing that the law is neither unjustified nor unduly burdensome, AB 587 violates the First Amendment.

## CONCLUSION

In light of the foregoing, this Court should reverse.

Dated: February 21, 2024

Respectfully Submitted,

Jonathan D. Urick
Maria C. Monaghan
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

*<u>/s/ Megan L. Brown</u>*
Megan L. Brown
*Counsel of Record*
Jeremy J. Broggi
Boyd Garriott
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
(202) 719-7000
mbrown@wiley.law

*Counsel for Amicus Curiae, Chamber of Commerce of the United States of America*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-271

I am the attorney or self-represented party.

**This brief contains** 5,011 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated ______.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Megan L. Brown **Date** 02/21/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*